PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
\_\_\_\_LODGED
\_\_\_\_RECEIVED

**January 12, 2006**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

In re:

ROY JAMES MURPHY, JR. and
ELIZABETH JEAN MURPHY,

Debtors.

Case No. 04-40732

**MEMORANDUM DECISION**

**NOT FOR PUBLICATION**

THIS MATTER came before the Court on Roy James Murphy, Jr. and Elizabeth Murphy's (Debtors) Motion to Sell Property (Motion). Based on the pleadings and arguments presented, the Court makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

The Debtors filed a voluntary Chapter 13 petition on January 28, 2004. The Debtors' Chapter 13 Plan (Plan) was confirmed on April 21, 2004. The confirmed Plan is a best efforts plan with a proposed dividend of 0% to unsecured. The Plan payment is $243 per month. The Plan provides in paragraph 3.C for first mortgage arrears owed to Midland Mortgage Company (Midland) of $10,000 to be paid by the Chapter 13 Trustee (Trustee) from all available funds after payment of administrative expenses.

MEMORANDUM DECISION - 1

The mortgage arrears claim of Midland is on the Debtors' residential real property located at 1803 Southwest 2nd Avenue, Battle Ground, Washington (Property). Midland is the holder of a note and deed of trust on the Property. The approximate balance owing to Midland is $150,000. The Debtors' Plan was confirmed and the Debtors were permitted, without objection, to pay the current mortgage payment to Midland outside of the Plan.

The Debtors entered into an agreement postconfirmation to sell the Property for $222,500. The Debtors filed a motion to sell the Property on November 30, 2005. Under the Debtors' proposal, a portion of the proceeds would be distributed to the Trustee to pay off all remaining unsecured claims in full, plus administrative expenses. All remaining secured claims, specifically, the Midland claim would be paid through escrow at closing.

The Trustee objected to the Motion arguing that the Debtors are bound by the confirmed Plan and that modification of the Plan is necessary to pay the Midland arrearage claim directly from escrow. The Trustee argues, however, that modification is impermissible in a case such as this where the sole purpose of the modification is to avoid the Trustee's statutory fee. Under In re Fulkrod, 973 F.2d 801 (9th Cir. 1992), the Trustee argues that the arrearage claim is an impaired claim that must be paid through the Plan.

The Debtors in this case have not filed a formal motion to modify their confirmed Plan. At the December 6, 2005 hearing, however, the Court heard argument regarding the Debtors' Motion in conjunction with a similar motion filed in the unrelated bankruptcy case of Dethpaskouk and Noi Saysouthep (Bankr. Case. No. 04-51852). At that hearing, the parties framed the issues to be decided by the Court in both cases as follows: (1) is modification of a chapter 13 plan necessary to pay an arrearage claim directly from escrow, and (2) can a plan be modified in order to pay the arrearage through escrow without paying the Trustee a

MEMORANDUM DECISION - 2

statutory fee. The Court will address both of these issues in its decision as they were argued by both parties and are necessary to completely resolve this matter.

On December 7, 2005, the Court entered an Order Authorizing the Debtors to Sell Real Property, but reserved the issue of modification and payment of the Trustee's fee.

**CONCLUSIONS OF LAW**

The primary issue raised by this Motion is whether the Debtors can pay the arrearage claim of Midland directly through escrow and thereby avoid the statutory Trustee fee, or whether they must be paid through the Plan.

A debtor is bound by the terms of a confirmed plan. See 11 U.S.C. § 1327(a). Under the Debtors' confirmed Plan, the arrearage claim of Midland is specifically provided for and is to be paid by the Trustee. Therefore, but for the sale, which generated sufficient funds to pay the Plan in full, the Trustee would have paid the arrearage claim during the life of the Plan and received her statutory fee. As the Debtors are seeking to provide different treatment for the arrearage claim than required by their confirmed Plan, the Trustee is correct that modification of the Plan is necessary.

Historically, both parties admit that the Trustee allowed a debtor to pay in full a mortgage arrears claim outside of a confirmed plan from the sale of property, without requiring a modification or paying the Trustee's statutory fee. Due to recent changes, however, in the real estate market and a sharp increase in the number of refinances, the Trustee has reexamined this policy. The Court understands the Trustee's concerns and the potential negative impact on her cashflow, however, the Court agrees with the Debtors that such concerns are insufficient to authorize her a fee to which she is not legally entitled.

MEMORANDUM DECISION - 3

A debtor has an absolute right under 11 U.S.C. § 1329 to seek modification of a confirmed plan. In re Sunahara, 326 B.R. 768, 782 (9th Cir. BAP 2005). In Sunahara, the Ninth Circuit Bankruptcy Appellate Panel recognized that a Chapter 13 debtor can modify a 36-month plan to complete it in less than 36 months and receive an early discharge. Sunahara, 326 B.R. at 782. Further, 11 U.S.C. § 1329(a)(3) specifically provides that a plan may be modified to "alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan." This is what the Debtors are seeking to accomplish. The Debtors would be modifying the Plan to pay it off in a lump sum and receive a discharge, while also modifying it to provide that the distribution to Midland on the arrearage claim would be paid outside the Plan.

The Court disagrees that modification to provide direct payment through escrow is precluded by Fulkrod. In Fulkrod, the Ninth Circuit Court of Appeals held that the "bankruptcy code does not authorize a debtor to make payments directly to creditors with claims modified by a plan of reorganization in order to avoid paying the bankruptcy trustee the statutory fee under 28 U.S.C. § 586." Fulkrod, 973 F.2d at 803. This ruling recognized the standing trustee's central role in the administration of Chapter 12 cases and the fact that the bankruptcy system is entirely funded from the plan payments disbursed by the trustee.[1] Fulkrod, 973 F.2d at 802. The Ninth Circuit commented that in enacting 28 U.S.C. § 586 to authorize fees only on funds "received," Congress could not have intended that a debtor would be able to avoid such fees by paying all impaired claims directly.

---

[1] Although Fulkrod was a Chapter 12 case, as the relevant provisions in both chapters are the same, it has application to Chapter 13 cases as well.

MEMORANDUM DECISION - 4

NOT FOR PUBLICATION

Fulkrod and its line of cases stem from an amendment to 28 U.S.C. § 586(e)(2) in 1986, to provide that the Chapter 12 or 13 trustee is only entitled to a fee on "all payments <u>received</u> by such individual under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee." 28 U.S.C. § 586(e)(2) (emphasis added). Prior to 1986, 28 U.S.C. § 586(e)(2), read that the trustee "shall collect such percentage fee <u>from all payments</u> under plans in the cases under this chapter for which such individual serves as standing trustee." Former 28 U.S.C. § 586(e)(2) (Reform Act of 1978) (emphasis added). Under the former statute, there were conflicting decisions as to whether the Chapter 13 trustee could collect a fee on payments made directly by a debtor. Lundin, <u>Chapter 13 Bankruptcy</u>, § 64.4, p. 64-3 (3d ed. 2000 & Supp. 2004). The 1986 amendment made it clear that a trustee was not entitled to a fee on direct payments. The change in the statute created a significant incentive for debtors to propose direct payments, especially on large claims, such as home mortgages that would generate a substantial fee. Cases such as <u>Fulkrod</u> and <u>In re Genereux</u>, 137 B.R. 411 (Bankr. W.D. Wash. 1992) make clear that, at least in the Ninth Circuit, debtors cannot propose direct payment merely to avoid statutory trustee fees.

<u>Fulkrod</u> and <u>Genereux</u> address a much different issue, however, than the case before the Court. In this case, the Debtors are not proposing to pay the mortgage arrears merely to avoid the statutory Trustee fee. Rather, the Debtors seek to have this claim disbursed directly from escrow because it is the most common, simplest, and a convenient way for parties to close a property sale and disburse the funds. As noted by the Debtors, if their request is denied, the escrow company would be required to disburse funds on the principal owed to Midland, for example, while the funds earmarked for Midland's arrearage claim would be sent to the Trustee for disbursements. Such a process is both complicated and administratively

NOT FOR PUBLICATION

MEMORANDUM DECISION - 5

unnecessary. The other option of allowing escrow to disburse the funds, but still allow the Trustee a statutory fee is not authorized under 28 U.S.C. § 586(e) because the Trustee never received the funds.

Further, a modification to pay a creditor directly from a lump sum amount that will result in termination of the case is different than a modification or proposal in a confirmed plan to pay a creditor directly on an impaired claim that will still require the Trustee's services for the duration of the Chapter 13 plan. In <u>Genereux</u>, for example, the bankruptcy court recognized the burden direct payment would place on the Trustee to monitor "potentially hundreds of debtors' direct payments." <u>Genereux</u>, 137 B.R. at 413. No further burden would be placed on the Trustee in this case because the Plan would be completed. In addition, although the number of refinances that result in Chapter 13 plan payoffs has recently increased, this is not a scenario that would arise in the majority of Chapter 13 cases. Therefore, unlike <u>Fulkrod</u> and <u>Genereux</u>, concerns regarding the impact on the Trustee's compensation in allowing direct payments outside the plan in a "large scale" is not as significant. <u>Genereux</u>, 137 B.R. at 413.

In addition, when a plan is paid in full from a sale of property, deduction of the usual trustee statutory fee from the proceeds could result in substantial overcompensation to the Trustee. <u>See</u>, <u>e.g.</u>, <u>In re Roberts</u>, 226 B.R. 240 (Bankr. D. Id. 1998) (trustee not entitled to fee under 28 U.S.C. § 586(e)(2) for funds directly distributed to creditor from sale of collateral even though confirmed plan provided for payment of claim by periodic payments to be disbursed by the trustee and where original motion provided for fees). In this case, the Trustee receives her fee on the unsecured claims immediately rather than over the duration of the Plan. Although she loses a fee on the arrearage claim, her responsibilities in the case are

MEMORANDUM DECISION - 6

terminated. In addition, this was a zero percent Plan that will now pay unsecured 100%. The Trustee will therefore receive fees on unsecured claims that were never anticipated.

The possibility of inequitable results and overcompensation to the Trustee is evident from a scenario pointed out by the Debtors. The Trustee apparently now requires that current mortgage payments be made through the plan when there are mortgage arrears. If, for example, the Debtors in this case had also been required to pay the current mortgage payment through the Chapter 13 Plan, upon the refinance, the Trustee would presumably be entitled to a fee not only on the arrearage claim, but also on the projected mortgage payments over the remaining term of the Plan. The commission on such a claim could be substantial and may result in the Debtors not qualifying for a refinance. Allowance of such a fee would be inequitable when the Trustee only had to monitor the case for a short period of time. Although the Trustee has indicated that she would not seek a fee in such a case, it is not illogical to apply her arguments to this situation. With either an arrears claim or current mortgage payments, the Trustee will be deprived a fee that she would have received in the future if the Plan were not modified.

In summary, the Debtors are able to modify their Plan to provide for direct payment on the Midland arrearage claim by escrow and the Chapter 13 Trustee is not entitled to any compensation on disbursements from escrow under 28 U.S.C. § 586(e), because the payments were never "received." Modification of the Plan is necessary because the confirmed Plan provided for different treatment of these claims. Additionally, under Sunahara, 326 B.R. at 781-82, a Chapter 13 trustee would normally be entitled to object to a modification as not being proposed in good faith if, for example, the debtors were not paying unsecured

MEMORANDUM DECISION - 7

claims in full. In this and similar cases, however, modification may often be only a technicality where unsecured claims will be paid in full.

DATED: January 12, 2006

*Paul B. Snyder*
Paul B. Snyder
U.S. Bankruptcy Judge

NOT FOR PUBLICATION

MEMORANDUM DECISION - 8